[Cite as *State v. Todd*, 2018-Ohio-4252.]

**3**

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
LOGAN COUNTY**

**STATE OF OHIO,**

    **PLAINTIFF-APPELLEE,**              **CASE NO. 8-18-18**

    **v.**

**JOSEPH W. TODD,**                    **O P I N I O N**

    **DEFENDANT-APPELLANT.**

**Appeal from Logan County Common Pleas Court
Trial Court No. CR2017-09-0293**

**Judgment Affirmed**

**Date of Decision:   October 22, 2018**

**APPEARANCES:**

    *Samantha L. Berkhofer* **for Appellant**

    *Alice Robinson-Bond* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Joseph W. Todd ("Todd"), appeals the April 18, 2018 judgment entry of sentence of the Logan County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case arises from a series of incidents occurring between May 2004 and October 2007 in which Todd allegedly engaged in sexual conduct with A.R. and X.R., each of whom was younger than ten years old at the time of the alleged incidents. (*See* Doc. Nos. 2, 38). On September 12, 2017, the Logan County Grand Jury indicted Todd on Counts One through Four of rape in violation of R.C. 2907.02(A)(1)(b), first-degree felonies. (Doc. No. 2). The indictment also specified that as to each of Counts One through Four, "the victim was less than ten years of age." (*Id.*). *See* R.C. 2907.02(B). On September 28, 2017, Todd appeared for arraignment and pleaded not guilty to the counts of the indictment. (Doc. Nos. 8, 13).

{¶3} A jury trial was held on February 22-23, 2018. (Feb. 22-23, 2018 Tr., Vol. I, at 1); (Feb. 22-23, 2018 Tr., Vol. III, at 343). (*See* Doc. No. 88). On February 23, 2018, the jury found Todd guilty of all four counts. (Feb. 22-23, 2018 Tr., Vol. IV, at 583-587); (Doc. Nos. 131, 132, 133, 134). The trial court filed its judgment entry of conviction on March 5, 2018. (Doc. No. 138).

{¶4} On March 30, 2018, Todd filed a motion for a new trial pursuant to Crim.R. 33. (Doc. No. 142). On April 4, 2018, the State filed a memorandum in opposition to Todd's motion for a new trial. (Doc. No. 143).

{¶5} At a hearing on April 6, 2018, the trial court denied Todd's motion for a new trial and sentenced Todd to life imprisonment on each of Counts One and Two, to be served concurrently. (Apr. 6, 2018 Tr. at 3, 15, 52-56). (*See* Doc. Nos. 147, 148). The trial court also sentenced Todd to life imprisonment on each of Counts Three and Four, to be served concurrently. (Doc. No. 148). The trial court specified that Todd is eligible for parole on Counts One and Two after serving 10 years in prison and that he is eligible for parole on Counts Three and Four after serving 10 years in prison. (*Id.*). The trial court further ordered that Todd's concurrent life sentences on Counts One and Two be served consecutively to his concurrent life sentences on Counts Three and Four, resulting in an aggregate sentence of two life sentences with parole eligibility after 20-years imprisonment. (*Id.*). Finally, the trial court classified Todd as a sexual predator.[1] (*Id.*). The trial

---

[1] Todd's alleged offenses occurred between May 2004 and October 2007. (*See* Doc. No. 2). Thus, all of Todd's alleged offenses took place before the effective date of Ohio's version of the Adam Walsh Act— January 1, 2008. *See In re Von*, 146 Ohio St.3d 448, 2016-Ohio-3020, ¶ 23. Sex offenders who committed their offenses prior to the effective date of Ohio's Adam Walsh Act cannot constitutionally be classified under the act, regardless of when an offender is convicted or sentenced. *Id.* at ¶ 16-17, 21, citing *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 16 and at the syllabus and *In re Bruce S.*, 134 Ohio St.3d 477, 2012-Ohio-5696. As a result, the trial court applied the classifications contained in Ohio's version of Megan's Law, the predecessor of the Adam Walsh Act, to Todd. *See State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, ¶ 18-20. "The sexual-predator classification was the highest-risk offender under Megan's Law." *Id.* at ¶ 26.

court filed its combined judgment entry of sentence, sex-offender classification, and denial of Todd's motion for a new trial on April 18, 2018. (*Id.*).

{¶6} On April 25, 2018, Todd filed a notice of appeal. (Doc. No. 156). He raises three assignments of error.

**Assignment of Error No. I**

**Whether failure to have the defendant present during the vior [sic] dire possess [sic] was plain error?**

{¶7} In his first assignment of error, Todd argues that the trial court's failure to ensure that he was present for the entire voir dire process is plain error. Specifically, Todd argues that he was absent from a portion of voir dire conducted in camera, that he had both a constitutional and a statutory right to be present during the entirety of voir dire, and that, due to this violation of his rights, his conviction and sentence should be vacated and a new trial ordered.

{¶8} "An accused has a fundamental right to be present at all stages of his criminal trial." *State v. Hamilton*, 1st Dist. Hamilton Nos. C-160247 and C-160248, 2017-Ohio-8140, ¶ 30, citing Ohio Constitution, Article I, Section 10 and Crim.R. 43(A). *See* Ohio Constitution, Article I, Section 10 ("In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel."). Under the Ohio Rules of Criminal Procedure, this right extends to the impaneling of the jury. Crim.R. 43(A)(1) ("[T]he defendant must be physically present at every stage of the criminal proceeding and trial, including the impaneling of the jury * *

\*."). "The failure of the trial court to ensure a criminal defendant's presence at an in camera *voir dire* proceeding to determine a juror's fairness and impartiality is error." *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph two of the syllabus. *See id.* at 286 ("[T]he trial court's failure to ensure [Williams's] presence at the *voir dire* proceeding was a transparent violation of both his constitutional and statutory rights."). However, "[a]n accused's absence * * * does not necessarily result in prejudicial or constitutional error." *Hamilton* at ¶ 30.

{**¶9**} "Errors of constitutional dimension are not *ipso facto* prejudicial." *Williams* at 286. Rather, "error[s] of [a] constitutional stature, either state or federal" are deemed to be nonprejudicial if they are "'harmless beyond a reasonable doubt.'" *Id.*, quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824 (1967) and citing *State v. Abrams*, 39 Ohio St.2d 53 (1974), paragraph two of the syllabus. "Particularly, as regards a defendant's constitutional right to be present at all stages of his trial, prejudicial error exists only where 'a fair and just hearing * * * [is] thwarted by his absence.'" *Id.*, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 108, 54 S.Ct. 330 (1934) and citing *United States v. Brown*, 571 F.2d 980 (6th Cir.1978).

{**¶10**} Furthermore, to the extent that a defendant's absence from trial proceedings amounts to a violation of his statutory rights under Crim.R. 43(A), such violations are subject to harmless error analysis. *See State v. Taylor*, 8th Dist. Cuyahoga No. 104243, 2017-Ohio-9270, ¶ 4, citing *Williams* at 287; *State v.*

*Warren*, 10th Dist. Franklin No. 10AP-376, 2010-Ohio-5718, ¶ 7 ("[A] defendant's absence in violation of Crim.R. 43(A), although improper, can constitute harmless error where she suffers no prejudice."), citing *Williams* at 285-287; *State v. Armas*, 12th Dist. Clermont No. CA2004-01-007, 2005-Ohio-2793, ¶ 25, 27-30 (concluding that Crim.R. 43(A) violations are subject to harmless error analysis). Harmless errors are those "error[s], defect[s], irregularit[ies], or variance[s] which do[] not affect substantial rights" and, as such, "shall be disregarded." Crim.R. 52(A).

{¶11} Here, a portion of voir dire was conducted in camera and outside of Todd's presence. The trial court summarized the reasons for and the conduct of the in camera voir dire as follows:

> 4. * * * [I]n * * * case[s] involving crimes of a sexual nature, the Court * * * submit[s] questions to the panel of prospective jurors. These were not people sworn in but [they] answered questions related to sexual misconduct that might reveal bias. Defense counsel * * * stipulated that he requested this procedure and did filter and approve the questionnaire.
>
> 5. * * * [A]s the prospective jurors entered the courtroom they were given the supplemental questionnaire and seated at tables so they could privately answer the questionnaire. When completed, the completed questionnaires were given to the Clerk of Court.

* * *

7. * * * [P]rospective jurors who answered affirmatively to the supplemental questionnaire were individually brought into chambers. * * * The prospective jurors were given an oath to answer all questions truthfully before being asked about his or her affirmative answers to the supplemental questionnaire.

8. Defense counsel * * * made inquiry of the prospective jurors and at no time did he advise the Court that he wanted [Todd] present. [Defense counsel] did exercise challenges for cause[,] and * * * no peremptory challenges were allowed by either attorney.

9. * * * [Todd] was present in the courtroom some thirty (30) feet away and was available to be called into chambers by defense counsel.

(Doc. No. 147).

{¶12} It is undisputed that Todd was absent from the in camera phase of voir dire. Therefore, we must assume that the trial court's failure to ensure Todd's presence during this stage of his trial deprived him of his constitutional and statutory rights to be present. *See Williams*, 6 Ohio St.3d at 286. However, Todd's trial counsel did not insist that Todd be present for the in camera period of voir dire, and he did not object to Todd's absence. As a result, we review only whether Todd's exclusion from the in camera portion of voir dire constitutes plain error. *See State*

-7-

*v. Sturgeon*, 3d Dist. Marion No. 9-12-39, 2013-Ohio-1389, ¶ 14; *State v. Reed*, 10th Dist. Franklin No. 09AP-1164, 2010-Ohio-5819, ¶ 13-14; *Armas* at ¶ 29; *State v. Sims*, 8th Dist. Cuyahoga No. 80036, 2002 WL 745569, *4-5 (Apr. 25, 2002).

**{¶13}** We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Under the plain-error standard, the appellant must demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors. *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58 (1990).

**{¶14}** We conclude that Todd's exclusion from the in camera voir dire was nonprejudicial and harmless; thus, his absence does not amount to plain error. That is, Todd's absence from this stage of his trial proceedings did not deprive him of a fair and just trial. *See Williams* at 286. First, Todd's interests were vigorously protected by his attorney who was present during the in camera voir dire. *See id.* at 286-287; *State v. Robinson*, 2d Dist. Montgomery No. 17393, 2001 WL 62569, *14 (Jan. 26, 2001). His trial counsel actively examined the potential jurors and moved

to strike potential jurors for cause. (*See* Feb. 22-23, 2018 Tr., Vol. I, at 78-79). Although the trial court denied one of Todd's trial counsel's motions to strike a prospective juror for cause, that potential juror was later eliminated from the jury pool by peremptory challenge. (*See id.* at 78-79, 189). Finally, Todd's trial counsel's thorough examination contributed, at least in part, to three of the prospective jurors being dismissed for cause by mutual agreement between the parties. (*See id.* at 57-59, 91-92, 117-119).

{¶15} In addition, Todd's attendance at the in camera voir dire would likely have contributed little to his defense. *See Williams*, 6 Ohio St.3d at 287. The supplemental questionnaires submitted to the jury pool queried whether the potential jurors, members of the potential jurors' families, relatives of the potential jurors, or friends of the potential jurors had been sexually abused, molested, sexually assaulted, or inappropriately touched as a child or as an adult. (*See* Supplemental Jury Questionnaires). Furthermore, the questionnaires asked whether the potential jurors or someone known by the potential jurors had ever been falsely accused of committing a crime, including a sex crime against an adult or a child. (*See id.*). During the in camera portion of voir dire, prospective jurors who responded affirmatively to these inquiries were individually questioned regarding their answers. (*See* Feb. 22-23, 2018 Tr., Vol. I, at 14-92).

{¶16} Based on the potential jurors' responses to the questions posed by the trial court and by the parties during the in camera voir dire, there is no evidence that Todd was implicated in any of the sex crimes that the potential jurors had been exposed to either personally or through a close relationship. *See Williams* at 287 (noting that Williams's presence at an in camera voir dire would have contributed little to his defense because he did not personally observe the events necessitating the in camera examination and his own conduct was not at issue).

{¶17} Moreover, there is no indication that Todd himself had been previously falsely accused of a crime known to any of the potential jurors or that he was the supposed victim of any of the crimes of which the potential jurors or a close relation of the potential jurors had been falsely accused. *See id.* Therefore, as Todd's own conduct was not at issue during the in camera voir dire, Todd did not possess any personal knowledge or special insight into the potential jurors' experiences with sex crimes or false accusations such that his presence would have contributed meaningfully to his defense. *See id.*; *State v. Brown*, 8th Dist. Cuyahoga No. 68761, 1996 WL 86627, *11 (Feb. 29, 1996) (concluding that Brown's presence during the questioning of a juror would have contributed little to his defense because the questioning concerned matters that did not directly involve Brown); *State v. Ogletree*, 2d Dist. Montgomery No. 9768, 1987 WL 15731, *3 (Aug. 14, 1987) (concluding that Ogletree's presence at the questioning of a witness would have

contributed little to his defense because the sole purpose of the questioning was to determine whether the witness was competent to testify).

{¶18} Finally, it appears from the record that Todd was physically present for the entirety of the voir dire conducted in open court. (*See* Feb. 22-23, 2018 Tr., Vol. I, at 105). Hence, Todd was able to listen to the questions posed to the entire jury pool, consult with his attorney regarding further challenges for cause based on the prospective jurors' responses to these questions, and affect his trial counsel's use of peremptory challenges, including decisions concerning the use of peremptory challenges to excuse jurors that had participated in the in camera voir dire. Therefore, it is clear that Todd was afforded ample opportunity to influence the makeup of the jury irrespective of his absence during the in camera portion of voir dire.

{¶19} Accordingly, we conclude that the trial court's failure to secure Todd's presence at the in camera voir dire was nonprejudicial and harmless under both constitutional and statutory standards. *See Williams*, 6 Ohio St.3d at 287. Todd has not shown that his absence from the in camera phase of voir dire affected any of his substantial rights. *See id.* As a result, Todd has not demonstrated plain error.

{¶20} Todd's first assignment of error is overruled.

**Assignment of Error No. II**

**Whether the trial court abused its discretion when it refused to allow a new trial?**

**{¶21}** In his second assignment of error, Todd argues that the trial court abused its discretion when it denied his motion for a new trial.  In particular, Todd argues, as he does in his first assignment of error, that his exclusion from the in camera voir dire deprived him of his fundamental constitutional right to be physically present at all critical stages of his trial.  According to Todd, his absence from the in camera voir dire was an irregularity in his trial proceedings that prevented him from having a fair trial, and thus, the trial court abused its discretion by denying his motion for a new trial.

**{¶22}** "Motions for a new trial are governed by Crim.R 33."  *State v. Cunningham*, 3d Dist. Allen No. 1-15-61, 2016-Ohio-3106, ¶ 28, citing *State v. Keith*, 192 Ohio App.3d 231, 2011-Ohio-407, ¶ 37 (3d Dist.).  Crim.R. 33(A) provides, in relevant part:  "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:  (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial * * *."  Crim.R. 33(A)(1).  Crim.R. 33(B) sets forth the timing requirements for motions for a new trial and provides:

> Application for a new trial shall be made by motion which, except for
>
> the cause of newly discovered evidence, shall be filed within fourteen
>
> days after the verdict was rendered * * * unless it is made to appear

by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered * * *. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

**{¶23}** "In order to file a motion for new trial after the expiration of the time periods specified in Crim.R. 33(B), a defendant must first seek leave of the trial court to file a delayed motion." *State v. DeVaughns*, 2d Dist. Montgomery No. 27727, 2018-Ohio-1421, ¶ 18, citing *State v. Lanier*, 2d Dist. Clark No. 2009 CA 84, 2010-Ohio-2921, ¶ 15, citing *State v. Warwick*, 2d Dist. Champaign No. 01CA33, 2002 WL 1585663, *2 (July 19, 2002), and citing *State v. Parker*, 178 Ohio App.3d 574, 2008-Ohio-5178, ¶ 16 (2d Dist.). "'To obtain leave, [a] defendant

must demonstrate by clear and convincing evidence that he or she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B).'" *Id.*, quoting *Warwick* at \*2. "'A party is "unavoidably prevented" from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence.'" *Keith* at ¶ 39, quoting *State v. Lee*, 10th Dist. Franklin No. 05AP-229, 2005-Ohio-6374, ¶ 8. "The standard of clear and convincing evidence used in Crim.R. 33(B) means 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 40, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶24} "A reviewing court will not disturb a trial court's decision granting or denying a Crim.R. 33 motion for new trial absent an abuse of discretion." *State v. Sanders*, 188 Ohio App.3d 452, 2010-Ohio-3433, ¶ 18 (10th Dist.), citing *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 82, citing *State v. Schiebel*, 55 Ohio St.3d 71, 76 (1990). An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v.*

*Adams*, 62 Ohio St.2d 151, 157-158 (1980). "A new trial should not be granted unless it affirmatively appears from the record that a defendant was prejudiced by one of the grounds stated in the rule or was thereby prevented from having a fair trial." *Sanders* at ¶ 18, citing *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 35 (10th Dist.).

{¶25} Among the reasons offered for denying Todd's motion for a new trial, the trial court concluded that the "Motion for New Trial was untimely filed pursuant to Crim.R. 33." (Doc. No. 148). We conclude that the trial court did not abuse its discretion by denying Todd's motion as untimely because Todd did not properly seek leave to file a delayed motion for a new trial or demonstrate that he was unavoidably prevented from filing his motion in a timely fashion. *See State v. Herring*, 8th Dist. Cuyahoga No. 105970, 2018-Ohio-1305, ¶ 15 ("A trial court does not abuse its discretion in denying an untimely motion for a new trial where the defendant fails to * * * seek[] leave from the trial court to file his motion or even allege that he was unavoidably prevented from filing his motion in a timely manner."), citing *State v. Green*, 10th Dist. Franklin No. 13AP-260, 2013-Ohio-5327, ¶ 11. *See also State v. Roberts*, 141 Ohio App.3d 578, 582-583 (6th Dist.2001) (concluding that when a defendant does not seek leave to file a delayed motion for a new trial, the trial court abuses its discretion by entertaining the defendant's untimely motion).

{¶26} Todd premised his motion for a new trial on the grounds set forth in Crim.R. 33(A)(1)—namely, that his exclusion from the in camera voir dire was an irregularity in the trial proceedings that prevented him from having a fair trial. (Doc. No. 142). Todd *did not* base his motion for a new trial on the discovery of new evidence. (*See id.*). Consequently, the first paragraph of Crim.R. 33(B) governs the timing of Todd's motion for a new trial, and under the first paragraph of Crim.R. 33(B), Todd was required to file his motion for a new trial within fourteen days after the jury rendered its guilty verdicts. Crim.R. 33(B).

{¶27} The jury rendered its verdicts finding Todd guilty on February 23, 2018. (Doc. Nos. 131, 132, 133, 134). Thus, for his motion for a new trial to be considered timely filed, Todd was required to file his motion no later than March 9, 2018. Crim.R. 33(B). *See* Crim.R. 45(A). However, Todd did not file his motion for a new trial until March 30, 2018. (Doc. No. 142). Therefore, because Todd did not file or seek to file his motion for a new trial within fourteen days after the jury rendered its verdicts finding him guilty, Todd was required to seek leave to file a delayed motion for a new trial and show, by clear and convincing proof, that he was unavoidably prevented from filing his motion within the prescribed filing period. *See DeVaughns*, 2018-Ohio-1421, at ¶ 18; Crim.R. 33(B).

{¶28} However, rather than filing a motion for leave to file in advance of or together with a motion for a new trial, Todd filed only his motion for a new trial.

(*See* Doc. No. 142). Todd's motion for a new trial did not include a formal request for the trial court to consider the untimely motion, and it presented neither argument nor proof that he was unavoidably prevented from filing his motion for a new trial within the 14-day filing period. *See State v. Franklin*, 7th Dist. Mahoning No. 09 MA 96, 2010-Ohio-4317, ¶ 16-17 (acknowledging that defendants must seek leave to file untimely motions for new trial but concluding that this requirement may be satisfied where the motion for new trial contains proof that the petitioner was unavoidably prevented from discovering new evidence). Thus, Todd did not demonstrate by any degree of proof, let alone clear and convincing, that he was unavoidably prevented from filing his motion in a timely manner such that he was entitled to file a delayed motion for new trial. Accordingly, we conclude that the trial court did not abuse its discretion by denying as untimely Todd's motion for a new trial.[2] *See Parma v. Palmer*, 8th Dist. Cuyahoga No. 101737, 2015-Ohio-1830, ¶ 9; *Franklin* at ¶ 22, 26; *State v. Morgan*, 3d Dist. Shelby No. 17-05-26, 2006-

---

[2] Here, we note that untimeliness was only one reason relied on by the trial court to deny Todd's motion for a new trial. The trial court also found that Todd was not actually prejudiced by his absence from the in camera voir dire, and in so finding, the trial court offered an alternative, substantive basis for denying Todd's motion. (Doc. No. 148). However, it was inappropriate for the trial court to address the merits of Todd's untimely motion without first finding that Todd was unavoidably prevented from filing his motion on time. *See State v. Seal*, 4th Dist. Highland No. 16CA14, 2017-Ohio-116, ¶ 11 ("'Although a defendant may file his motion for a new trial along with his request for leave to file such a motion, the trial court may not consider the merits of the motion for a new trial until it makes a finding of unavoidable delay.'"), quoting *State v. Covender,* 9th Dist. Lorain No. 11CA010093, 2012-Ohio-6105, ¶ 13. Nevertheless, because the trial court did not abuse its discretion by denying Todd's motion on grounds that it was untimely and because the trial court's decision on the merits of Todd's motion was not essential to its conclusion, any error in reaching the merits of Todd's motion was harmless.

Ohio-145, ¶ 9-10; *State v. Darkenwald*, 8th Dist. Cuyahoga No. 83440, 2004-Ohio-2693, ¶ 41; *State v. Starling*, 10th Dist. Franklin No. 01AP-1344, 2002-Ohio-3683, ¶ 14; *Warwick*, 2002 WL 1585663, at *3.

{¶29} Todd's second assignment of error is overruled.

### Assignment of Error No. III

**Whether defense counsel's failure to request the defendant to be present during vior [sic] dire was ineffective assistance of counsel?**

{¶30} From the face of his third assignment of error, Todd appears to argue that, because of his trial counsel's failure to object to his exclusion from the in camera voir dire, he received ineffective assistance of counsel. However, on examination of the arguments contained under the heading of Todd's third assignment of error, it is clear that he is not actually arguing that his trial counsel was ineffective. Rather, Todd claims that his trial counsel's failure "to request the defendant be present during vior [sic] dire *was not* ineffective assistance of counsel." (Emphasis added.) (Appellant's Brief at 5). This statement does not appear to be accidental as Todd continues: "In the case at hand, [Todd's trial counsel] did fail to directly ask for [Todd] to be present during voir dire. However, this did not rise to being a substantial violation of defense counsel's essential duties." (*Id.*). According to Todd, because "defense counsel was not required to request that [Todd] be brought into the court room prior to vior [sic] dire," Todd's

trial counsel's failure to request Todd's presence or object to Todd's absence did not amount to ineffective assistance of counsel. (*Id.*).

**{¶31}** App.R. 16(A)(7) requires that an appellant's brief feature "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." *See State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11. Furthermore, App.R. 12(A)(2) provides that this court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." *Id.*

**{¶32}** In this case, rather than setting forth an argument that his trial counsel was ineffective and supporting that argument with legal authority and citations to the record as he is required to do, Todd does precisely the opposite—he expressly argues that his trial counsel *was not* ineffective. In doing so, Todd does not allege any error and thus necessarily fails to identify in the record the error on which he bases his assignment of error as required by the Rules of Appellate Procedure. To the extent that Todd's trial counsel *may* have been ineffective, we decline to pore through the record in order to create that argument for Todd. *See State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 37 ("If an argument exists that can

support an assignment of error, it is not this court's duty to root it out."), citing *State v. Shanklin*, 3d Dist. Union No. 14-13-23, 2014-Ohio-5624, ¶ 31, citing *State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, ¶ 30 (9th Dist.). Accordingly, we decline to address Todd's third assignment of error.

**{¶33}** Todd's third assignment of error is overruled.

**{¶34}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**